PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.                                        No. 06-2069

MORTON SARUBIN,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:05-cv-01501-RDB)

Argued: September 25, 2007

Decided: November 16, 2007

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge, and
T. S. ELLIS, III, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

---

Vacated and remanded by published opinion. Judge Duncan wrote the
opinion, in which Chief Judge Williams and Senior Judge Ellis con-
curred.

---

## COUNSEL

**ARGUED:** Teresa Thomas Milton, UNITED STATES DEPART-
MENT OF JUSTICE, Tax Division, Washington, D.C., for Appellant.
Caroline D. Ciraolo, ROSENBERG, MARTIN & GREENBERG,
L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J.

Rosenstein, United States Attorney, Baltimore, Maryland; Eileen J. O'Connor, Assistant Attorney General, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, Tax Division, Washington, D.C., for Appellant.

## OPINION

DUNCAN, Circuit Judge:

Morton Sarubin filed personal income-tax returns in 1995 and 1996 showing a cumulative tax debt of nearly two million dollars, which he never paid. After a decade of unsuccessful collection efforts, the Internal Revenue Service ("IRS") sued to collect over four million dollars, an amount representing the original debt and penalties plus statutory interest. The government moved for summary judgment, which the district court granted in part and denied in part. The court allowed recovery on the original debt. However, the court held that the government was estopped from collecting some two million dollars in interest that was not included in the indebtedness balance listed in the Certificates of Assessment attached to the motion for summary judgment. Because the government is statutorily entitled to recover interest on unpaid taxes accruing to the date of payment, regardless of whether such interest is reflected in an assessment, we reverse that portion of the district court's order.

I.

Sarubin timely filed his 1994 tax return, reporting taxable income totaling $2,625,038 and a tax obligation of $1,136,877. He failed to pay this amount. As a result, the IRS "assessed"[1] a tax liability of

---

[1]In this context, an "assessment is the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). An assessment is required if the IRS seeks to utilize its administrative power of lien and levy to forcibly collect statutory interest. 26 U.S.C. § 6322.

$1,136,877, a failure-to-pay penalty of approximately $11,000, and interest on both in an amount nearing $16,000.[2]

History repeated itself in connection with Sarubin's tax return for 1995. His October 17, 1996 filing[3] reported taxable income totaling $2,170,260 with $619,808 consequently due to the IRS. Again, he failed to satisfy this obligation, and on November 18, 1996, the IRS assessed against him a tax liability of $619,808, penalties of over $58,000 and interest nearing $33,000.[4]

The IRS issued subsequent notices[5] and demands for payment to Sarubin, who nevertheless made only token payments towards his obligations. The government ultimately filed a civil collection suit on the debts in June 2005. The complaint alleged that the IRS had assessed taxes, penalties, and interest in connection with Sarubin's 1994 and 1995 tax returns, but that the assessed amounts had remained unpaid. The complaint also noted that "[s]tatutory additions for penalties and interest have accrued and will continue to accrue" on the unpaid amounts. J.A. 4, 5. The government sought judgment in the amount of $4,092,983, plus "statutory additions for interest" accruing "after May 13, 2005, to the date of entry of judgment," and continuing "until the judgment is fully paid." J.A. 5.

The government soon moved for summary judgment, offering as proof of the amount of Sarubin's tax liability a "Certificate of Assessments, Payments and Other Specified Matters" (a "Certificate of

---

[2]The additional obligation to pay interest is intended to compensate the government for the loss of use of its property during the time it takes for the taxpayer to satisfy his arrears. *United States v. Childs*, 266 U.S. 304, 309-10 (1924).

[3]Though returns for a given tax year are typically due the following year on the 15th of April, §§ 6012, 6072, Sarubin obtained extensions of time in which to file his 1995 return, *see* § 6072.

[4]For each set of assessments, the amount of interest assessed represented the amount that had accrued since the April 15 standard return due-date, regardless of when the return was actually filed. § 6601(b).

[5]There is a factual dispute as to the precise content of the notices. The exact amounts listed in the notices, however, are not relevant to our analysis here.

Assessments" or "Certificate"), also known as a Form 4340, for each of the 1994 and 1995 tax years. Generally, a Certificate of Assessments provides an itemized list of a given taxpayer's assessed tax liability, as modified by subsequent assessments of debits and credits. The Certificates here were prepared on September 2, 2005, and listed the assessments of tax, interest, and penalties for 1994 and 1995 that had been made on June 5, 1995, and November 18, 1996, respectively. The Certificates did not itemize any further assessments of penalties or interest, but did record the occasional sending of notices of indebtedness and the sporadic receipt of small payments. The final page of each Certificate bears a line-item marked "balance," representing the sum of the itemized debits less any credits.[6]

Sarubin opposed the motion for summary judgment, raising, inter alia, two objections relating to the Certificates. First, Sarubin argued that the Certificates were insufficient as an evidentiary matter to substantiate the amount of damages the government sought to recover. Second, Sarubin argued that the government should be limited to recovering the "balances" listed on the Certificates, totaling $1,867,376.70.

The district court agreed on both counts, finding that the Certificates only supported recovery of the "balances" listed and that Sarubin would have been justified to read the "balances" as pay-off amounts that would have fully satisfied the debt.[7] It was "simply

---

[6]Each Certificate concludes with a signed certification statement. The statements read, in full:

I certify that the foregoing transcript of the taxpayer named above in respect to the taxes specified is a true and complete transcript for the period stated, and all assessments, abatements, credits, refunds, and advance or unidentified payments, and the assessed balance relating thereto, as disclosed by the records of this office as of the account status date are shown therein. I further certify that the other specified matters set forth in this transcript appear in the official records of the Internal Revenue Service.

J.A. 19, 23.

[7]We note that Sarubin never attempted to pay off the debts in reliance on the Certificates' alleged representation of a pay-off amount.

untenable," the court held, for "the [g]overnment [to] send such a notice representing a fixed figure as of a certain date and then seek additional funds not previously stated." J.A. 35. The district court therefore ordered payment of the underlying debts and the statutory interest that accrued after the issuance of the Certificates. The district court estopped the government, however, from collecting the unitemized and unassessed statutory interest—over $1.5 million in connection with the 1994 tax year that had accrued from April 15, 1995 to September 2, 2005, and over $700,000 in connection with the 1995 tax year that had accrued from April 15, 1996 to September 2, 2005. The government now appeals, seeking reversal of the district court only with respect to its denial of recovery of full interest on the debts.

## II.

We review de novo the district court's partial denial of the government's motion for summary judgment. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Such a motion should be granted when "'there is no genuine issue as to material fact'" and the government "'is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).

Like the imposition of tax obligations themselves, the accrual of interest on tax obligations is governed by the Internal Revenue Code (the "Code"). "If any amount of tax imposed by this title . . . is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 *shall* be paid for the period from such last date to the date paid." 26 U.S.C. § 6601(a) (emphasis added).[8] Because accrued interest is treated under the Code in the same manner as the underlying tax obligation, § 6601(e)(1), the "amount of tax" that accrues further interest under § 6601(a) includes interest already accrued. *See United States*

---

[8]Other sections of the Code unpack the statutory terms used in § 6601(a). For taxpayers like Sarubin, the "last date prescribed for payment" falls on April 15 of the calendar year following the underlying tax year. *See* §§ 6072, 6151, 6601(b). The "underpayment rate" is a percentage set by the Secretary of the IRS on a quarterly basis, § 6621, though the interest itself compounds daily, § 6622.

*v. Banks*, 442 F.2d 43, 45 (8th Cir. 1971).[9] Reading these Code provisions in conjunction, we find § 6601(a) to plainly require a dilatory taxpayer to pay interest accruing from the date the tax is due and compounding until the date the total obligation is paid.

When a taxpayer fails to satisfy an obligation, the government may proceed in two ways. First, it may opt to institute summary collection procedures. The ability to pursue such procedures springs from the government's power to attach a federal tax lien on all property of a delinquent taxpayer. § 6321. Before the government can exercise such power, it must first provide notice of its intent to do so, § 6303(a), for the protection of the taxpayer. *United States v. Berman*, 825 F.2d 1053, 1059-60 (6th Cir. 1987). Then, the government must make an assessment, which gives rise to a lien in "the amount so assessed." § 6322.[10] Independent of these administrative actions, however, interest continues to accrue automatically on any unpaid debt. § 6601(a).

Alternatively, the government may seek to collect unpaid obligations via its common-law right to sue on a debt. *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 271 (1926). In contrast to the notice requirement in summary collection procedures, the government is not required in a common-law action to issue additional notice of its intent to recover the debt beyond the filing of the complaint. *United States v. Jersey Shore State Bank*, 781 F.2d 974, 979-80 (3d Cir. 1986) (holding that when "the government cannot proceed administratively" and instead institutes a civil action, "service of the government's complaint provides the party with all the notice and protection required"). Likewise, an administrative assessment of the full obligation, a necessary step in summary collection procedures, is not a prerequisite to collection via common-law suit. *In re Davis*, 936 F.2d 771, 774 (4th Cir. 1991). Indeed, a contrary rule would raise practical

---

[9]That is, the taxpayer is liable not only for interest on the initial tax obligation, but for interest on that interest as well.

[10]Such an assessment is merely the administrative recording of an existing liability. *See* § 6203; *Hibbs*, 542 U.S. at 101 (defining the term "assessment" to mean "the official recording of liability that triggers levy and collection efforts"); *Cohen v. Mayer*, 199 F. Supp. 331, 332 (D.N.J. 1961) ("The purpose of an assessment is to place the taxes owed on the books of the Government.").

difficulties. Since interest compounds daily, § 6622, the government would have to calculate and assess the ever-compounding interest anew each day that its common-law action remained unresolved and the debt unpaid.

The proceedings here are the result of a common-law collection action, not a summary collection effort. Under *In re Davis*, then, the government was required to do nothing more than file suit to initiate collection of Sarubin's full obligation—including taxes, penalties, and interest accruing from the date the taxes were due by operation of law under § 6601(a). *See* 936 F.2d at 774. We therefore reject Sarubin's argument on appeal that the government can only recover the *assessed* debts in this common-law collection action.[11]

Notwithstanding the straightforward analysis reflected in our precedent, the district court found that the Certificates represented a collective "balance" owed of only $1,867,376.70, and that Sarubin could justifiably rely on that balance as a pay-off amount. Invoking principles of estoppel, the district court apparently concluded that Sarubin reasonably relied on the assessed balance to his detriment. The court's concern was misplaced for two reasons.

First, the holding below misconstrues the role that Certificates of Assessment play in collection proceedings. Certificates of Assessment serve a limited evidentiary purpose; they are commonly used to prove the amount of the underlying tax liability. Because the IRS's determination that a tax is owed is presumed correct, *United States v. Hardy*, 299 F.2d 600, 606 (4th Cir. 1962), the government can "establish[ ] a prima facie case in support of the tax liability charged in the complaints when it introduce[s] into evidence the certified copies of the

---

[11]To the extent that Sarubin complains of a lack of notice of the amount he now owes, he cannot maintain that he is unfairly surprised. Section 6601(a) mandates the accrual of such interest, and the government's complaint facially demanded over two million dollars of "[s]tatutory . . . interest [that] *ha[d] accrued* and will continue to accrue," J.A. 4, 5 (emphasis added). Sarubin may be surprised as a matter of mathematics that the interest he owes now exceeds the amount of the underlying obligation, but he can hardly contend that he is surprised as a matter of inadequate notice.

certificates of assessment," *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980). Although establishing the amount of *tax* liability is a matter of evidence, the amount of *interest* accrued on such tax liability is a matter of law. *United States v. Schroeder*, 900 F.2d 1144, 1150 n.5 (7th Cir. 1990). Therefore, the government provided sufficient evidence to prove that Sarubin owed the underlying tax debt sought, which debt has in turn accrued interest by operation of statute. The district court's suggestion that the government failed to show a prima facie case by attaching the Certificates and citing to § 6601(a) was thus inaccurate.

Second, Sarubin has no legitimate claim to the equitable principles of estoppel. The mere attachment of the Certificates of Assessment to the government's motion for summary judgment could not justify reliance on the "balance" listed as a pay-off amount. We find a comparison to a remarkably similar case decided by the Court of Federal Claims to be instructive. *See Ghandour v. United States*, 37 Fed. Cl. 121, 127 (1997), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997) (unpublished table opinion). In *Ghandour*, a taxpayer likewise argued that the government's recovery of outstanding debts should be limited to the amounts expressly itemized in a Certificate of Assessment. The Certificate in question certified that it included "all assessments, penalties, *interests*, abatements, credits, refunds, and advance or unidentified payments relating thereto." *Id.* at 126 (emphasis added). The court nevertheless held that the Certificate "cannot alter the amount of interest" which the government "is entitled to recover . . . because interest accrues . . . by operation of law," *id.* at 127 (internal quotations omitted).

Sarubin is an even less-likely candidate for the relief of estoppel than was the taxpayer in *Ghandour*. The Certificates here are, by their own terms, certified transcripts only of "assessments, abatements, credits, refunds, and advance or unidentified payments, and the *assessed* balance relating thereto." J.A. 19, 23 (emphasis added). Sarubin could not justifiably rely on the Certificates to include *unassessed* interest when the Certificates do not include unassessed debts of any kind. Furthermore, and in contrast to the certification in *Ghandour*, the Certificates here do not purport to include "interest" at all. In any event, it is unclear how Sarubin might have relied on the bal-

ances since the Certificates were not presented to him until the motion for summary judgment was filed.

The Code leaves no room for a taxpayer to evade his responsibility to pay the taxes he owes. When a taxpayer, for whatever reason, does not meet his obligation in a timely manner, the debt automatically begins accruing interest by operation of statute. Sarubin's case presents no exception. The government adequately proved Sarubin's liability for the underlying taxes, and Sarubin is thus obligated to pay his tax burden along with the interest that it has accrued in the twelve years since he first failed to pay.

## III.

Because we find that there is no issue of material fact and that the government is entitled to judgment as a matter of law, we vacate and remand with instructions for the district court to enter judgment in favor of the government for the full amount sought, including the interest that started accruing in 1995 and the interest that continues to accrue until the obligation is fully satisfied.

*VACATED AND REMANDED*